Good morning, Your Honors. May it please the Court, my name is Gregory Olive, and I'm here to represent Arnaldo Silva. Could you speak a little louder, please? My name is Gregory Olive, and I'm here to represent Arnaldo Silva. I bring an issue before the Court that, in the facts of the case, that the immigration judge allowed the attorney's counsel to withdraw on the day of the merits hearing, and without a proper waiver from the petitioner. So then, referring to Mr. Mendoza, Mr. Iago... Had this fellow been through a couple lawyers before? I'm sorry, Your Honor? Yes, he had two attorneys before. And his proceeding had been going on for some years? That's correct, Your Honor. However, the facts stated in the case... He had several continuances? He had numerous continuances, Your Honor. And he wouldn't get another one? But, Your Honor, the reasons for the continuances were not properly stated by the immigration judge or the government. If it's helpful to the Court, I have made a list of the appearances. Let me tell you what's on my mind so you can respond to it. If a person chooses to represent himself, he's entitled to an appropriate warning under the rules. However, in terms of due process of law, a person is entitled to fair notice and a fair hearing and a fair opportunity to be heard. I am concerned that the rules can be manipulated by a person who has no case, so every time things get close to a resolution, he fires his lawyer, he gets a continuance, when it finally comes time to decide the case, or hear the case at least, fires his lawyer the day of the hearing. He didn't really want to represent himself so much. He just doesn't like that particular lawyer on that particular day and fires him. It troubles me to say that it's a denial of due process not to give him another continuance, to get another lawyer where there's every appearance that he's manipulating the system, not to get a hearing or to get a fair hearing or to get fair representation at a hearing, but to avoid a hearing and to avoid representation at a hearing and to avoid being heard. So just explain to me what I'm misunderstanding about the facts. This individual, the petitioner, has been a long time resident of the United States. He came here at a very young age. He has LPR status for a long period of time. He has three United States citizen children. His father has a green card. His mother has had a green card. All his siblings are here, so this man deserves his day in court. He had substantive equities in his case. He has substantial evidence, including his application, supporting a fair case. Let me tell you what's troubling me and maybe you could help me through this. Mauriel Luna requires that the petitioner be advised if he's going to have to proceed pro se, correct? I'm not familiar with that case, Your Honor. As I read Mauriel Luna, which is the controlling Ninth Circuit authority, it requires, in that case they gave a one-week notice to proceed to get a lawyer where another lawyer withdrew. My question to you would be, how many times do you have to give notice before it ends? Otherwise, it seems to me like you get yourself in a Zeno's paradox situation. You never get, as judges noted, you don't get to the end because you're always approaching the end. Well, the petitioner had the full expectation for his attorney to represent him at his trial. If his attorney would have followed the proper procedures as established by the court manual itself, he should have given his notice two weeks ahead of time. Well, he did. He gave notice. He did it the first time. That's my point. It was done the first time. It was done the second time. Now we're up to the third time, and I suppose that it could go fourth and fifth time.  That's what I'm saying. How many times do you have to give the requisite notice before it really means something? Could the court be more specific in requisite notice? Well, the requisite notice you're asking us to honor here. The attorney should not be allowed to withdraw on a date of the merits hearing, Your Honor. Even when the client refuses to cooperate or fails to cooperate? Well, Your Honor, that's a factual issue. Well, the first time he was in the hospital. No, and before the court, the attorney walks in late. Let's go through the sequence. The first time he was in the hospital, right? He didn't show up. Second time, I forget what happened. Third time, he said he was in jail. For 90 days or something like that? Well, that's why he didn't supposedly do his fingerprints within 15 months. But that's also a dispute. A lot of the facts in this case are disputed, Your Honor. Even the fact that he did not do his fingerprints are disputed. Well, except when the immigration judge asked him, when you got out of jail, I'm paraphrasing, how come you didn't call your attorney? And he says, I'm telling you, I had other stuff on my mind. Basically, he doesn't say, well, I didn't know that I should do that. He just says it wasn't a high priority. I don't know why the immigration judge can't rely on that sort of answer, you know, in open court to... Let me take a different tack, then, in that the immigration judge is still required to go forward on the merits of the case. This is not a real ID act. He's still required. The IJ did go forward on the merits of the case. He just didn't let the fellow delay it yet again. I mean, the fellow, he was told, about time to have your fingerprints here. We've been horsing around with this for a long time. He doesn't. He says, it just slipped my mind. It wasn't my first priority. And on why he didn't call his lawyer, he says, as Judge Graber quoted, I'm telling you, I had other stuff on my mind. He's just blowing it off. And you're saying that the immigration judge has to give him advice on the dangers of self-representation. He never asked for self-representation, really. He asked for continuance. And he won't cooperate with a lawyer. He always gets a new one when things are closed. Everything you said when I asked you about that before was totally unresponsive to my question. Instead, you told me about the equities of the case, that he's been in the U.S. for a long time with a green card. To me, that actually supports the proposition that he was doing everything possible to stall the hearing because he had such a strong incentive to remain in the U.S. even if he didn't have a legal right to. Well, if I may, in regards to him not having his fingerprints. It's the stalling, not the fingerprints, that matters. Why couldn't the I.J. go ahead with this fellow on the day that he did? That's what matters. The I.J. did not go ahead on this day. He did not question the witnesses. He did not review the record. Well, that troubled me a little, but I think I've got a handle on it now. This is actually, he had been ordered deported, had he not? And then he then sought to stay that order. It was reopened. That's right, but he sought to reopen for the purpose of trying to, not overturn, but to get a different decision. But he had the burden of going forward. And when he didn't go forward, there was really nothing more for the I.J. to go except to say, well, you haven't gone forward. The order of removal was already present. It was already extant. The order of removal was revoked because the case was reopened. The order of removal had not been revoked in the sense that it had been nullified. The order of removal was stayed, conditioned on his given an opportunity to establish some defense to it. And he was not given that opportunity, Your Honor. Well, I guess that's the issue, isn't it? Well, the judge, and like I said, this case is very similar to Mendoza-Masiriegos v. Mukasey, in which this court determined that reasonable steps must be taken to ensure that immigrants' statutory right to counsel is honored. And then this case is very similar, except the Masiriegos, if you win, no one can ever be deported, can they? Wouldn't your success, if we were to publish an opinion saying you're right, wouldn't that mean no one can ever be deported? Because everyone would be entitled to hire a lawyer with the understanding that they would fire him the day of the hearing, and they would be entitled to a continuance when they did, and no final adjudication would ever occur. Well, at least the immigration judge should have given, should have applied a standard. You want to answer my question? No, Your Honor, that's not fair, because every case should be considered on its own merits. And I believe in this particular case, the immigration judge should have given the petitioner a right to present his case in court and interviewed all the witnesses. And furthermore, the immigration judge did not make mistakes in this case, and if I could mention them briefly. Well, you have exceeded your time, but we'll give you about half a minute to sum those up, and since we used a lot of your time, you'll be entitled to a little bit for rebuttal as well. So if you would briefly summarize. I believe the petitioner was about to tell the immigration judge that he had taken the fingerprints. Actually, from what he states on page 154 of the administrative record, I actually, what I remember, you told me last time that it would be nice to, it would be a perfect time to do my fingerprints in October 4th around that time. October, and the judge says October of last year, and then he goes on to say, yes, and I, I think he was going to say, that's when I took the fingerprints, and the judge cuts him off and says, okay, so you didn't, that's your right. In other words, the judge did not give him an opportunity to explain that he did do his fingerprints. Furthermore, the judge made his oral decision based that he was guilty of assault with a deadly weapon. After he made his oral decision, the immigration judge goes on for 10 pages, and during that conversation, the immigration judge determines, oh, he was never convicted of that. He was convicted of carrying a concealed weapon. So the petitioner really never was We'll hear from the government. May it please the court, Brianna Stripley on behalf of the government. Your honors, this case really raises two distinct issues, one of which is the fingerprinting requirement, and whether or not the immigration judge abused his discretion in denying the continuance in order for the petitioner to get those fingerprints done. And the second is the issue that petitioner raised, which is whether or not petitioner was deprived of his statutory right to counsel or deprived of due process when the immigration judge denied, I'm sorry, granted petitioner's counsel's request to withdraw. Is there a third consideration here, namely whether there is a violation under which the removal can proceed? That is to say, does a review of the record actually establish the violation alleged? Well, your honor, respectfully, one that was never raised, and therefore never exhausted, and so not before this court. But moreover, he conceded removability. Well, in this case, your honor, petitioner conceded removability, so it's not a matter in controversy in this case. All right. So the answer to my question is yes, it's conceded. Yes, it is conceded. His removability was conceded by petitioner. Where do we find that? One of the initial hearings, which would probably be around administrative record 55 through 59. I'm not sure of the exact page, but if you want, I can, while petitioner gives rebuttal, look it up. With regards to the fingerprinting requirement, the immigration judge did not abuse his discretionary, denied petitioner's 13th request for a continuance to get fingerprinted when petitioner had already received oral and written notice of the fingerprinting requirement, was advised twice about the consequences, under oath in court admitted that he understood those consequences, and that despite giving 17 months to get those fingerprints taken, he did not. And moreover, he gave no reasonable explanation for why he couldn't. While these cases are evaluated on a case-by-case basis, the two decisions that govern are Cui and Carapetian, and using those as a barometer. Which ones did you say? I'm sorry, what was that? Which ones did you say, which cases? Oh, Cui and Carapetian. And using those cases as a barometer, it becomes very clear that there was no abuse of discretion in this case, as they are extremely distinguishable. First, in Cui, the court held that the immigration judge's terse instructions failed to comply with the regulation 8 CFR 1003-47D. And basically what that regulation requires the IJ to specify on the record that petitioner was given those instructions about biometrics. And a second requirement that the immigration judge actually explain the consequences for failure to get those. In Cui, the immigration judge did neither. Here, the immigration judge did both. And more importantly, he did it twice. I will point the court to that explanation of the consequences were fully given by the immigration judge. The immigration judge also went above and beyond this regulation, because at the end of explaining those consequences, he actually asked petitioner, do you understand? And both times, petitioner affirmed. Furthermore, in Carapetian, the court found that the immigration judge's notice was vague. Here, again, there was no such thing. The court can consider the unreasonableness of petitioner's conduct when evaluating the fingerprint requirement and the failure to do so. Here, it's very distinguishable from Carapetian. In Carapetian, the reason why the alien needed a continuance was because of an extenuating circumstance, namely that he was in a car accident that caused debilitating injury and was unable to get the fingerprint. Petitioner merely said it wasn't a priority of mine. It slipped my mind. And again, petitioner's hearing was on September 18, 2003. And then his later one was January 24, 2005. 17 months, he was only incarcerated from July 5, 2004 to October 28, 2004. He had three months to comply, even after release from being incarcerated, to comply with those fingerprinting requirements. And he did not. Lastly, the court also considers length and the number of continuances. Unlike Queen Carapetian, where the time took two years, this was four years. And the number of continuances were 12 prior. That number doesn't even include the number of continuances that were on the government or joint or because of the court. Those were solely petitioner's requests. He got 12 continuances at his request? Prior, granted. He got 12 continuances at the prospective deportee's request? Prior to this 13th request, which was denied and is at issue before this court, he had 12 prior. And again, that number does not include when the government joined in one motion and then the court also on one, because of its calendar moved one. So that's excluding those. So those are 12 prior granted continuances solely based on petitioner's requests. Moving to the second issue, which is the immigration judge did not violate petitioner's statutory right to counsel in due process. In the Biowet case, the court held that an immigration judge must provide an alien with reasonable time to locate counsel and allow that counsel time to prepare. In Biowet, the court found that petitioner was deprived of that statutory right to counsel because he was only granted two continuances for a cumulative of five days, five business days, while he was incarcerated. This case, again, is wholly distinguishable. A particular note, the immigration judge in this case actually encouraged petitioner to get counsel. Initially he had requested to just move on and proceed on his own, and therefore this case is very distinguishable from where the court criticized the immigration judge for forcing petitioner to proceed. In this case, the immigration judge continued it, requested that petitioner actually proceed to try and seek counsel. Moreover, petitioner was granted six continuances to get counsel in the initial phase, so his first counsel, which was attorney Barbara Darnell. He was granted six continuances to get his first attorney. That attorney also withdrew, citing difficulty in petitioner's behavior and unavailability of petitioner to be able to prepare the case, which is similar to the same thing the second attorney was citing when he withdrew. Given that Ms. Darnell withdrew, this is not an isolated incident. He's now had multiple counsels that have multiple problems with him. Petitioner then retained new counsel, which was Mr. Bustamante. Petitioner was given two more continuance after, in order from Darnell to Mr. Bustamante. So he had six up to the first counsel, and then was given two more to get this new counsel. And moreover, he was warned, and this court alluded to that, but I think the language is really important. Which page are you looking at? On the administrative record 141, which is the September 18, 2003 hearing, which is the one right before the hearing at issue here. The immigration judge specifically said to petitioner, if you have a problem with Mr. Bustamante, you and he are not getting together, or things are not working out, you better come and see me right away, or you go get a new attorney, whatever you want to do. But sir, I'm not going to grant you a continuance again if at the last minute you and your attorney fail to prepare your case and you have done nothing about this. He asked him, do you understand? He responded, yes, sir. Yet despite this warning, this is exactly what happened. We go 17 months later. Is that the hearing that starts 142? Are we referring to the most recent one? Yeah. 117 months later. I don't have the record with me, but that is the last hearing. So there's September 18, 2003, and then the next one is January 24, 2005. So if it starts on January 24, 2005, you're on the last hearing. 142. Okay. So essentially what we have is no action on Petitioner's part for 17 months. Petitioner's counsel at the time, Mr. Bustamante, came in and made an oral motion pursuant to the regulations, which can be granted for good cause shown. Mr. Bustamante, on the record, cited to the fact that he sent letters, made phone calls since August 2004, all of which were ignored by Petitioner. He said that since the September 18, 2003 hearing, the first time he had contact with Petitioner was the week of January 2005. He had an appointment scheduled with Petitioner. Petitioner rebuffed him, didn't show, canceled on that appointment, even though it was explained to him that paperwork needed to be done at that hearing in order to proceed on his case. And moreover, Petitioner, at the hearing on January 24, 2005, admitted that he never contacted his attorney. Now, if we put this into context, this is an alien who has a vast criminal history. He's familiar with the courts. He understands his obligations, and yet he chose not to, in that entire 17 months, make an affirmative contact with his own attorney. And then he comes in on the day of court. So Petitioner's argument that this is particularly concerning and that it was the day of the hearing, this is because of Petitioner's actions. He did not avail himself to his counsel actually contact him and say, we need to discuss this withdrawal. He attempted to. Counsel, you've exceeded your time, and I think we understand your position. Thank you, Your Honor. Thank you very much. We'll submit on the brief. Thank you. Mr. Olive, we used a lot of your time with questions, and you're welcome to a minute for rebuttal, if you want it. Your Honor, first of all, the facts of this policy, most of the facts in this case are undisputed. Counsel has made a list of motions for contingency requested by Petitioner. I have some copies if the Court likes to. But I count 1, 2, 3, 4, 5, 6, 7, 8, 9, 10. One of those was the in absentia. One of them was the court, the government did not have their application, which was on June 23rd. I find the request to find an attorney is 1, 2, 3, 4. Four contingencies to find an attorney, and this is before three different judges. And this started in Deloitte, Arizona before Judge Slato went to Judge Reichenberg and Judge Fong. So Petitioner requesting 13 contingencies that he requested is totally incorrect. Furthermore, even assuming the attorney was properly allowed to withdraw and Petitioner had to represent himself against his own attorney, who the facts were in dispute also, Petitioner does not agree that he received two letters. However... You seem to think you have a right to contingencies. I don't get it. No, I'm not saying that, Your Honor. I haven't finished my argument yet. You have 26 minutes, 27 seconds over the allotted time. Yes, Your Honor. Basically, Petitioner had a right to present his case before the court and call his witnesses and properly represent himself. The judge basically did not allow him to do that, basically because of his lack of not having done fingerprints. However, he was not under Real ID Act and he should have applied a different standard. Thank you, counsel. The case just argued is submitted.
judges: Kleinfeld, Lucero, Graber